No. 14-1217

# United States Court of Appeals
# for the Fourth Circuit

JOHN DAVID RAPLEE, JR.,

*Appellant,*

*v.*

THE UNITED STATES OF AMERICA,

*Appellee.*

*On Appeal from the United States District Court for the District of Maryland at Greenbelt in Case 8:13-cv-01318-PWG (Hon. Paul W. Grimm, Judge)*

## BRIEF FOR PLAINTIFF-APPELLANT
## JOHN DAVID RAPLEE

L. PALMER FORET, ESQ.
WAYNE MANSULLA, ESQ.
PETER T. ANDERSON, ESQ.
ASHCRAFT & GEREL, LLP
11300 Rockville Pike
Suite 1002
Rockville, MD 20852
(301) 770-3737 Telephone
(301) 881-6132 Facsimile
lpforet@ashcraftlaw.com
panderson@ashcraftlaw.com

*Attorneys for Plaintiff-Appellant*

July 23, 2014

CP COUNSEL PRESS    (888) 277-3259

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. <u>14-1217</u> Caption: <u>John David Raplee Jr. v United States</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,
<u>John Raplee, Jr.</u>　　who is <u>　Appellant　</u>, makes the following disclosure:
　(name of party/amicus)　　(appellant/appellee/amicus)

1.　　Is party/amicus a publicly held corporation or other publicly held entity?
　　　　( ) YES　　　　　　　　　　　( X ) NO
2.　　Does party/amicus have any parent corporations?
　　　　( )　YES　　　　　　　　　　( X ) NO
　　　　If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.　　Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
　　　　( ) YES　　　　　　　　　　　( X ) NO
　　　　If yes, identify all such owners:

4.　　Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
　　　　( ) YES　　　　　　　　　　　( X ) NO
　　　　If yes, identify entity and nature of interest:

5.　　Is party a trade association (amici curiae do not complete this question)?
　　　　( ) YES　　　　　　　　　　　( X ) NO
　　　　If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.　　Does this case arise out of a bankruptcy proceeding?
　　　　( ) YES　　　　　　　　　　　( X ) NO
　　　　If yes, identify any trustee and the members of any creditors' committee:

Signature: <u>/s/ L. Palmer Foret</u>　　　　　　Date: <u>July 23, 2014</u>
　　　　　　Counsel for Appellant

i

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF THE ISSUES ON APPEAL ......................................2

STATEMENT OF THE CASE.................................................................3

STATEMENT OF FACTS ......................................................................5

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT ..........................................................................................8

   I.  Introduction................................................................................8

   II.  Standard of review .....................................................................9

   III. Filing a statement of claim in HCADRO constitutes the filing of an "action" under the FTCA's limitations period .............................................10

      A.  In Maryland, the mandatory filing of an HCADRO statement of claim is the beginning of a medical malpractice action ...........................11

      B.  The plain language of the FTCA requires that "action" be interpreted to include HCADRO filings....................................................13

      C.  The District Court and the United States failed to cite any authority restricting the definition of "action" under Section 2401(b)....................17

   IV. The FTCA's six-month limitations period is not jurisdictional and, therefore, equitable tolling may be applied ..........................................20

ii

V. Equitable tolling must be applied here, where the United States defectively mailed the notice of final denial that would normally trigger the FTCA's six-month limitations period..........................................30

CONCLUSION ...................................................................................34

REQUEST FOR ORAL ARGUMENT ....................................................34

STATUTORY ADDENDUM ......................................................Add. 1

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Carroll v. Konits,*
   400 Md. 167, 929 A.2d 19 (2007) ....................................................12

*Debbas v. Nelson,*
   389 Md. 364, 885 A.2d 802 (2005) .................................................15

*Edward W. McCready Mem. Hosp. v. Hauser,*
   330 Md. 497, 624 A.2d 1249 (1993) ...............................................13

*Evans v. B.F. Perkins Co.,*
   166 F.3d 642 (4th Cir.1999) ...........................................................10

*F.D.I.C. v. Meyer,*
   510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)....................8

*Glarner v. United States Dep't of Veterans Admin.,*
   30 F.3d 697, (6th Cir. 1994) ...........................................................27

*Gonzalez v. Thaler,*
   -- U.S. --, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) .........................25

*Gould v. U.S. Dep't of Health & Human Servs.,*
   905 F.2d 738 (4th Cir. 1990) .......................................... 8, 27, 28, 29

*Hughes v. United States,*
   263 F.3d 272 (3d Cir. 2001)....................................................... 26, 27

*Irwin v. Dep't of Veterans Affairs,*
   498 U.S. 89 (1990) .................................................................. *passim*

*John R. Sand & Gravel Co. v. United States,*
   552 U.S. 130 (2008)................................................................ *passim*

*Johnson v. Zimmer,*
   686 F.3d 224 (4th Cir. 2012) ..........................................................14

iv

*Kolisbash v. Committee on Legal Ethics of West Virginia Bar,*
    872 F.2d 571 (4th Circ. 1989) ................................................................... 16-17

*Kwai Fun Wong v. Beebe,*
    732 F.3d 1030 (9th Cir. 2013) ...................................................... 24, 26, 29, 30

*Lamie v. U.S. Tr.,*
    540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) .................................. 14

*Matos v. United States,*
    380 F. Supp. 2d 36 (D.P.R. 2005) ................................................... 31, 32, 33

*McLaughlin v. Safway Servs.,*
    LLC, 429 F. App'x 347 (4th Cir. 2011) .......................................................... 10

*Mizrach v. United States,*
    CIV. WDQ-11-1153, 2012 WL 414806
    (D. Md. Feb. 7, 2012) ................................................................ 8, 18, 19, 30

*Moya v. United States,*
    35 F.3d 501 (10th Cir. 1994) ..................................................................... 32

*Mulder v. Commissioner,*
    855 F.2d 208 (5th Cir. 1988) ..................................................................... 32

*Nat. Coalition for Students v. Allen,*
    152 F.3d 283 (4th Cir. 1998) ..................................................................... 14

*Osheroff v. Chestnut Lodge, Inc.,*
    62 Md. App. 519, 490 A.2d 720 (1985) ......................................................... 11

*Powell v. Commissioner of Internal Revenue,*
    958 F.2d 53 (4th Cir. 1992) .................................................................. 32, 33

*Schmidt v. United States,*
    498 U.S. 1077 (1991) ....................................................... 25, 26, 27, 28

*Schmidt v. United States,*
    933 F.2d 639 (8th Cir. 1991) ............................................................. 26, 27

*Soriano v. United States,*
 352 U.S. 270 (1957) ........................................................................23

*United States v. Kubrick,*
 444 U.S. 111 (1979) ........................................................................25

*United States v. Lehman,*
 225 F.3d 426 (4th Cir.2000) ...........................................................14

*Wilson v. Gottlieb,*
 821 F. Supp. 2d at 778 (D. Md. 2011) ............................. 11, 12, 16, 17

*Zander v. United States,*
 843 F. Supp. 2d. 598 (D. Md.),
 aff'd, 494 F. App'x 386 (4th Cir. 2012) ..................................... *passim*

**Statutes**

26 U.S.C. § 6212(b)(1)......................................................................32

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1346(b)(1)........................................................................1

28 U.S.C. § 1442 ..............................................................................17

28 U.S.C. § 2671 ................................................................................1

28 U.S.C. § 2679 ..............................................................................17

28 U.S.C. § 2401(b) .................................................................... *passim*

42 U.S.C. § 2000e-16(c) ...................................................................21

Md. Code, Cts. & Jud. Proc. § 3-2A-02(a)(2) ................................11

Md. Code, Cts. & Jud. Proc. § 3-2A-04(a)(1)(i)...............................11

Md. Code, Cts. & Jud. Proc. § 3-2A-04(b) ................................................13

Md. Code, Cts. & Jud. Proc. § 3-2A–04(b)(1)(i)(1) ...............................11

Md. Code, Cts. & Jud. Proc. § 3-2A–04(b)(3)(i) ...................................11

Md. Code, Cts. & Jud. Proc. § 3-2A-06(b) ..................................... 12, 13

MD Code. Cts. & Jud. Proc. § 3-2A-06(b)(f)(1) ....................................13

**Rules**

Fed. R. App. P. 4(a)(1)(A) .......................................................................1

Fed. R. Civ. P. 12(b)(1).............................................................................9

**Other Authorities**

1966 U.S.C.C.A.N. 2515 ..................................................................... 15, 16

1966 U.S.C.C.A.N. 2522 .........................................................................15

S. Rep. No 1327 ................................................................................. 15, 16

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The District Court had jurisdiction over the underlying dispute pursuant to federal question jurisdiction because the complaint was filed under the Federal Tort Claims Act (28 U.S.C. § 2671, et seq.) and sought monetary damages against the United States. (*See* Doc 1 at ¶ 1); 28 U.S.C. § 1331; 28 U.S.C. § 1346(b)(1).

This Court has jurisdiction over this appeal as it is an appeal from a final decision of a district court entered on February 11, 2014. (Doc 18, Letter Order of Feb. 11, 2014); 28 U.S.C. § 1291. The appeal was timely, as it was filed within 30 days of entry of the final decision. (Doc 19, Notice of Appeal of Mar. 10, 2014); Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES ON APPEAL

1. Whether filing a statement of claim with Maryland's Health Care Alternative Dispute Resolution Office constitutes the filing of an "action" to satisfy the Federal Tort Claims Act limitations period in 28 U.S.C. § 2401(b).

2. Whether the six-month limitations period of the Federal Tort Claims Act (28 U.S.C. § 2401(b)) is a non-jurisdictional requirement and, therefore, subject to equitable tolling.

3. Whether equitable tolling applies to the Federal Tort Claims Act's six-month limitations period (28 U.S.C. § 2401(b)) where the Department of Health and Human Services defectively mailed its final notice of claim denial to Mr. Raplee.

## STATEMENT OF THE CASE

Plaintiff-Appellant, John D. Raplee, Jr., filed a medical malpractice action against the Defendant-Appellee, the United States of America, under the Federal Tort Claims Act on May 3, 2013 in the United States District Court for the District of Maryland. (Doc 1, Complaint).

The United States filed a motion to dismiss on July 1, 2013, asserting that Mr. Raplee failed to file an "action" under Section 2401(b) of the Federal Tort Claims Act (FTCA) within six months from the date the Department of Health and Human Services (HHS) mailed its notice of final denial of an administrative tort claim. (Doc 3, Motion to Dismiss). After Mr. Raplee filed an opposition (Doc 4) and the United States filed its reply (Doc 5), Mr. Raplee filed a motion for leave to file a surreply (Doc 6), which the United States opposed (Doc 7). The District Court granted the motion and allowed the surreply to be filed. (Doc 12). The District Court also asked the parties to provide additional information on the issues in a December 30, 2012 Letter Order setting a hearing date. (Doc 14, Letter Order).

In opposition to the United States' motion to dismiss, Mr. Raplee argued that he complied with the FTCA's limitations period by filing a statement of claim with Maryland's Health Care Alternative Dispute Resolution Office (HCADRO) within six months from HHS's notice of final denial. Further, Mr. Raplee argued that

3

HHS's defective mailing of the notice of final claim denial indefinitely tolled the FTCA's six-month limitations period.

The District Court held a hearing on February 10, 2014 and issued a ruling on the record granting the United States' motion to dismiss.  On February 11, 2014, the District Court entered a letter order confirming the ruling granting the Defendant-Appellee's motion to dismiss. (Doc 18, Letter Order). Mr. Raplee filed his notice of Appeal on March 10, 2014. (Doc 19, Notice of Appeal).

## STATEMENT OF FACTS

In the underlying action, Plaintiff-Appellant, John D. Raplee, Jr., alleged that National Institute of Health physicians committed medical malpractice during a parathyroidectomy he underwent on September 18, 2006. (Doc 1 at ¶ 16). Mr. Raplee alleged that this procedure resulted in rhabdomyolysis and permanent nerve and muscle damage. (*Id.* at ¶¶ 16-30).

In accordance with FTCA procedures, on September 16, 2008, Mr. Raplee mailed to HHS a notice of claim alleging malpractice was committed during his parathyrodiectomy of September 18, 2006. (Doc 3-3). In a letter dated September 26, 2008, HHS acknowledged receipt of the claim on September 17, 2008, and requested evidence substantiating the claim. (Doc 3-4). On June 26, 2009, Mr. Raplee provided two boxes of records to HHS. (Doc 3-5).

 HHS mailed a notice of final denial letter to counsel for Mr. Raplee on June 19, 2012 that, if mailed properly, would have triggered the FTCA's six-month limitations period for filing an "action". *See* 28 U.S.C. § 2401(b). However, counsel for Mr. Raplee never received the denial letter and it is not disputed that the letter was returned to HHS unopened. (Doc 3-4); (Hearing Transcript at 5:14-5:15). HHS addressed its denial letter to Mr. Raplee's former counsel, Martin Trpis, who was working at another company at the time of the mailing. (Hearing Transcript at 5:16 – 6:16; 9:24 – 10:6). The unopened letter has handwriting stating

5

the intended recipient is "no longer at this company." (Doc 3-4). Defendant-Appellee, the United States, admits that it knew the letter was never delivered, and also admits it never made any further inquiry into whether the letter was received. (Hearing Transcript at 46:5 – 46:6). The United States also admits that it never resent the letter or called anyone at the offices of opposing counsel to determine whether the letter was received. (*Id.*). Mr. Raplee filed his statement of claim with HCADRO on November 8, 2012, within six months of the June 19 letter even though it was unknown at that time that the USA had attempted to send the denial letter. (Doc 4-2).

Mr. Raplee filed his Certificate of Merit and his expert's narrative report with HCADRO on February 1, 2013 and waived arbitration on March 4, 2013. (Doc 4-2). On March 7, 2013, HCADRO issued a transfer order, allowing Mr. Raplee to file a complaint with the United States District Court for the District of Maryland – Southern Division, which he did on May 1, 2013. (Doc 1, Complaint). The United States filed its motion to dismiss on July 1, 2013, which was Mr. Raplee's first notice that HHS had sent a defective notice of denial on June 19, 2012.

## SUMMARY OF THE ARGUMENT

HHS sent Mr. Raplee a notice of final denial on June 19, 2012. If the notice had been correctly mailed, Mr. Raplee had until December 19, 2012 to file an action under the FTCA's six-month limitations period. Despite HHS's defective mailing of the notice of final denial, Mr. Raplee complied with the FTCA's six-month limitations period in filing an action with HCADRO, less than five months after HHS sent him a notice of denial, on November 8, 2012.

Even if this Court determines that filing a statement of claim with HCADRO does not constitute the filing of an "action" under the FTCA, equitable tolling provisions are applicable to the FTCA's limitations period at issue because it is not jurisdictional. Where a statute is deemed non-jurisdictional, there is a rebuttable presumption in favor of equitable tolling. In this case, equitable tolling applies because HHS's denial letter to Mr. Raplee was defectively mailed and tolled the FTCA's limitations period indefinitely.

# ARGUMENT

## I.    Introduction

This appeal involves the interpretation and application of Section 2401(b) of the FTCA. Congress passed the FTCA in 1946, which waived the United States' sovereign immunity for certain torts committed by federal employees. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994). This waiver permits suit only on terms and conditions strictly prescribed by Congress. *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990) (en banc). Section 2401(b) of the Act contains a two-part limitations clause, which states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues **or unless action is begun within six months after the date of mailing**, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C.A. § 2401(b) (emphasis added). Although Section 2401(b) oddly uses the phrase "or unless" to connect the two timing requirements, the Fourth Circuit (and other courts) interprets the phrase to mean "and." *Mizrach v. United States*, CIV. WDQ-11-1153, 2012 WL 2861367 (D. Md. July 10, 2012) aff'd, 539 F. App'x 284 (4th Cir. 2013) cert. denied, 134 S. Ct. 1947 (U.S. 2014). Thus, Section 2401(b) requires a claimant to (1) present a tort claim with the relevant federal agency

8

within two years after the claim accrues, and (2) begin an "action" within six months after the agency denies that claim. *Id.*

Because there is no case law interpreting the meaning of "action", the word must be defined using its common, dictionary definition, which includes filing a statement of a claim with an arbitration board. Additionally, the legislative history of Section 2401(b) indicates that Congress did not intend to restrict the definition of "action" to mean only a tort claim filed in a typical court of law. Here, Mr. Raplee complied with the FTCA's six-month limitation period by filing a statement of claim with HCADRO.

Even if this Court determines that filing an HCADRO statement of claim does not constitute beginning an "action" under Section 2401(b) of the FTCA, Mr. Raplee timely filed his complaint because Section 2401(b) is not jurisdictional. There is a rebuttable presumption in favor of applying equitable tolling to non-jurisdictional statutes. Here, the FTCA's six-month limitation period was tolled indefinitely because HHS defectively mailed its notice of final denial letter and never rectified the problem.

## II.    Standard of review

The District Court dismissed Mr. Raplee's case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Hearing Transcript at 2:20); (Doc 18, Letter Order of Feb. 11, 2014). The Fourth Circuit applies a *de*

*novo* standard when reviewing a district court's dismissal of a complaint for lack of

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *McLaughlin v. Safway*

*Servs.*, LLC, 429 F. App'x 347, 348 (4th Cir. 2011); *see also Evans v. B.F. Perkins*

*Co.*, 166 F.3d 642, 647 (4th Cir.1999).

## III.    Filing a statement of claim in HCADRO constitutes the filing of an "action" under the FTCA's limitations period

Mr. Raplee complied with the FTCA's first limitations period because his

surgery occurred on September 18, 2006 and HHS received his Notice of Claim

within two years on September 17, 2008. (Doc 3-4). The United States does not

dispute this, but argues that Mr. Raplee failed to meet the second part of the

limitations period by failing to begin an "action" within six months after the date

HHS mailed its denial letter. However, Mr. Raplee also complied with the second

limitations period by filing a statement of claim with HCADRO on November 8,

2012 – less than six months after the mailing of HHS's denial letter. (Doc 4-2).

Filing a statement of claim with HCADRO satisfies Section 2401(b)'s

requirement to begin an "action" within six months of the government's mailing of

the final denial notice because: (1) filing a statement of claim with HCADRO is

the mandatory beginning of a malpractice action in the state of Maryland; (2) the

plain language of Section 2401(b) indicates that "action" includes filings with

arbitration boards; (3) the absence of any case law defining the term "action",

dictates that  "action" must be defined using its common dictionary definition; and

10

(4) the legislative history of Section 2401(b) demonstrates that Congress intended a broader definition of "action" than the United States argues for.

### A.   *In Maryland, the mandatory filing of an HCADRO statement of claim is the beginning of a medical malpractice action*

In Maryland, a plaintiff in a medical malpractice action must comply with the Health Care Malpractice Claims Act, which mandates that a medical malpractice suit "may not be brought or pursued in any court of this State except in accordance with [the statute]." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(a)(2). The act sets out a series of procedural requirements which must be observed before judicial review of a malpractice claim may be obtained. *Osheroff v. Chestnut Lodge, Inc.*, 62 Md. App. 519, 524-25, 490 A.2d 720, 722-23 (1985).

To begin a medical malpractice case in Maryland a plaintiff must first file a statement of claim with HCADRO. *Wilson v. Gottlieb*, 821 F. Supp. 2d 778, 785 (D. Md. 2011); MD Code § 3-2A-04(a)(1)(i). Second, within 90 days, the plaintiff must file a "certificate of qualified expert" accompanied by an expert report attesting to departures in the standard of care. MD Code § 3–2A–04(b)(1)(i)(1), (b)(3)(i). At this point, if the plaintiff decides not to waive arbitration, the parties select an arbitration panel and the case is heard and adjudicated after a fixed period of time for discovery. *Wilson*, 821 F. Supp. 2d at 785. The arbitration panel reaches a decision and issues an award. *Id.* at 786. Just like any other Maryland judicial proceeding, the HCADRO proceedings are governed by the Maryland rules. *Id.* at

11

785. HCADRO holds real judicial decision-making power: it can hold evidentiary

hearings; allow the cross-examination of witnesses; and issue subpoenas. *Id.*

A litigant's failure to comply with any of the prescribed steps along the path

of arbitration may result in dismissal of an action. *Id.* Thus, filing with HCADRO

is a condition precedent to the maintenance of a medical malpractice lawsuit. *See*

*Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007). In fact, the United

States has argued for the dismissal of cases for failure to comply with the Act when

plaintiffs have not filed with HCADRO. *See, e.g., Zander v. United States of*

*America*, 84 F. Supp. 2d 598, (D. Md. 2012). Effectively, the filing of an

HCADRO statement of claim is the beginning of the medical malpractice action.

Without the HCADRO claim, a plaintiff does not have a malpractice case in the

state of Maryland.

Furthermore, reading Section 2401(b) to exclude HCADRO proceedings

from the definition of "action" makes little practical sense, and could result in an

extremely draconian set of procedural hurdles for potential medical malpractice

plaintiffs. In order to waive arbitration with HCADRO, a plaintiff may file a

waiver election at any time after filing an expert certificate. *Wilson*, 821 F. Supp.

2d at 785; MD Code § 3-2A-06B. Then the plaintiff must wait until the HCADRO

offices issues a transfer order by its own arbitrary deadline. However, within just

sixty days of filing a waiver of arbitration, the plaintiff must file a complaint in the appropriate Maryland state or federal court.  MD Code § 3-2A-06B (f)(1).

Supposing in an FTCA case such as this, the federal agency mailed a notice of final denial letter to a claimant and the claimant was able to file his claim with HCADRO on that same day (which is unlikely given time for delivery). Pursuant to MD Code § 3-2A-04(b), the claimant would have, if provided an extension, one hundred and eighty days to file a certificate of qualified expert. *Edward W. McCready Mem. Hosp. v. Hauser*, 330 Md. 497, 624 A.2d 1249 (1993). Only once the claimant files the certificate of qualified expert can a party individually waive arbitration. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-06(B). After the waiver of arbitration, the claimant must then wait an unknown period for HCADRO to issue a transfer order. The claimant can only file a complaint with the appropriate circuit court or United States District Court once arbitration is waived and the transfer order is issued. Therefore, if HCADRO is not treated as beginning an action for purposes of the FTCA, the Act's six-month limitation period becomes much shorter and much more difficult for a plaintiff to comply with.

**B.    *The plain language of the FTCA requires that "action" be interpreted to include HCADRO filings***

Filing a statement of claim with HCADRO constitutes the beginning of an "action" under the plain language of the FTCA because, ". . .when the statute's language is plain, the sole function of the courts – at least where the disposition

required by the text is not absurd – is to enforce it according to its term." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citations and internal quotations marks omitted). Section 2401(b) states the beginning of an "action" satisfies the statute's limitations period. Section 2401(b) does not limit the specific tribunal in which to begin the proceeding. Part one of Section 2401(b) is specific that a filing must be with the appropriate federal agency within two years, but is silent as to where the action must be brought within six months of denial. That silence is instructive that commencing an action is not confined to one type of court.

In interpreting undefined statutory language, the words must be "interpreted as taking their ordinary, contemporary, common meaning." *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (quoting *United States v. Lehman*, 225 F.3d 426, 428 (4th Cir.2000)). When determining a word's plain or common meaning, the Fourth Circuit "customarily turn[s] to dictionaries . . ." *Id.* (quoting *Nat. Coalition for Students v. Allen*, 152 F.3d 283, 289 (4th Cir.1998)).

Merriam Webster defines the noun "action" as "the initiating of a proceeding in a court of justice by which one demands or enforces one's rights." Merriam-Webster.com, http://www.merium-webster.com/dictionary/action (last visited July 15, 2013). Black's Law dictionary defines the word "action" to mean "[a] civil or criminal judicial proceeding." Black's Law Dictionary (9th ed. 2009). Additional

14

entries state that "action" may be used to refer not only to an "ordinary proceeding", but also "special proceedings." *Id.* The term "action" is defined as "*any* judicial proceeding, which, if conducted to a determination, will result in a judgment or decree" (emphasis added). *Id.*

HCADRO was designed to reduce the cost of physicians' insurance premiums, which were purportedly rising due to dubious medical malpractice cases. *Debbas v. Nelson*, 389 Md. 364, 376, 885 A.2d 802, 809 (2005). Mandatory arbitration of medical malpractice cases was created to reveal weaknesses in cases and provide a means for obtaining expert opinions, leading to more reliable decisions and predictable awards issued by arbitration panels. *Id.* at 376; 809. In other words, HCADRO functions as a court, issuing awards and judgments. Therefore, an HCADRO statement of claim creates an "action" under Section 2401(b) if the FTCA.

In support of its contention that the FTCA's limitation period was only meant to be satisfied by the filing of complaint in a United States District Court, the United States cites language from a 1966 Senate Report recommending amendments to the FTCA. (United States' Reply, Doc 5 at 8 (citing S. Rep. No 1327, 1966 U.S.C.C.A.N. 2515, 2522)). Section 2 states that the amendments would require a claim with the proper federal agency to be filed "prior to filing a **court action** against the United States" (emphasis added). S. Rep. No 1327, 1966

U.S.C.C.A.N. 2515, 2521. Section 7 states that the amendments would include a requirement for "the filing **of a court action** within 6 months of notice by certified or registered mail of a final decision of the claim by the agency to which it was presented." *Id.* at 2522 (emphasis added).

However, these proposed amendments were never enacted. While "court action" was considered, the word "court" was not included in the actual statute when it became law, indicating Congress did not intend to limit an "action is begun" only by filing in U.S. District Court. Further, when describing the purpose of the amendment, the Senate Report reads, "any tort action must be brought within 6 months after final denial of the administrative claim." S. Rep. No 1327, 1966 U.S.C.C.A.N. 2515, 2515. Nowhere does the Senate report state that such action would be restricted to a U.S. District Court. The legislative history is clear that the language defining where an "action" was to be filed was intentional and is not specific to a particular court for the purposes of complying with the six month time limitation.

While HCADRO is an administrative agency, it has been previously held that HCADRO "constitutes a 'State court' for which a proceeding may be removed" because it "operates in an adjudicatory manner, [and]… a federal officer or his agent is subject to its process." *Wilson v. Gottlieb*, 821 F. Supp. 2d at 778, 791 (D. Md. 2011) (citing *Kolisbash v. Committee on Legal Ethics of West*

16

*Virginia Bar*, 872 F.2d 571 (4th Circ. 1989)). In *Wilson*, the Court applied the functional test to determine that the defendant could remove the proceeding from HCADRO to federal court pursuant to the federal officer removal statute (28 U.S.C. § 1442) and the removal statute of 28 U.S.C. § 2679, a provision of the FTCA. Both statutes allow for removal of a proceeding from a State court to a federal district court. In *Wilson,* the United States argued that HCADRO was a "State court" for purposes of both the federal officer removal statute and the removal statute of the FTCA. *Wilson*, 821 F. Supp. 2d at 781.

Filing a statement of claim with HCADRO must be considered the beginning of an "action" under the FTCA because the plain, dictionary definition of "action" encompasses arbitration proceedings in which judgments and awards are issued. *Wilson* further supports Mr. Raplee's position that filing in HCADRO is an "action" under the FTCA.

### C.   *The District Court and the United States failed to cite any authority restricting the definition of "action" under Section 2401(b) of the FTCA to exclude claims with state arbitration panels*

The lower court erred in ruling that filing a statement of claim with HCADRO does not constitute an "action" as it is defined under the FTCA. (*See* Doc 18, Letter Order of Feb. 11, 2014). In support of his opinion that the filing of a statement of claim does not constitute an "action" under the FTCA, Judge Grimm relied principally upon *Zander v. United States*, 843 F. Supp. 2d 598 (D. Md.

17

2012), and *Mizrach v. United States*, No. WDQ-11-1153, 2012 WL 414806 (D. Md. Feb. 7, 2012). (*See* Doc 18, Letter Order of Feb. 11, 2014). Judge Grimm cited these opinions despite recognizing earlier in the case that the definition of "action" under the FTCA was an issue of "first impression" in Maryland. (*See* Doc 12, Paperless Order of Dec. 12, 2013). In fact, at the February 10, 2014 hearing, Judge Grimm also admitted that there was no case law specifically on point with respect to whether an HCADRO filing constitutes an "action" under Section 2401(b). (Hearing Transcript at 36:25; 37:1-11).

Furthermore, *Zander* and *Mizrach* have no bearing on how "action" is defined under the FTCA. In *Zander*, as here, the United States conceded that the plaintiff filed an administrative tort claim within two years, but asserted that she failed to begin an "action" within six months of the notice of final denial. *Zander*, 843 F. Supp. 2d 598. However, in *Zander*, the court did not have to decide the meaning of "action" under the FTCA. The only issue was the interpretation of the words "date of mailing " in Section 2401(b). *Id.* at 605-606.

*Mizrach* is also unhelpful for determining the meaning of "action" because it is factually dissimilar to the instant case and the court never analyzed the wording of Section 2401(b). *Mizrach v. United States*, CIV. WDQ-11-1153, 2012 WL 414806 (D. Md. Feb. 7, 2012) aff'd, 539 F. App'x 284 (4th Cir. 2013) cert. denied, 134 S. Ct. 1947 (U.S. 2014). In *Mizrach*, the decedent's sister filed an

18

administrative tort claim with the Department of Veterans Affairs (VA), alleging malpractice, on May 2, 2005. *Id.* at *1. The government agency issued its final denial on February 7, 2008. *Id.* at *1. On August 5, 2008, the decedent's nephew, acting *pro se,* filed a survival action against the United States on behalf of his deceased uncle, but failed to first file the case in HCADRO as required under Maryland law. *Id.* at *1. The government's motion to dismiss for failure to exhaust remedies under Maryland law was granted. *Id.* at *2.[1]

On February 25, 2010, over two years after the VA issued its claim denial, Mizrach filed a claim with HCADRO. *Id.* at *1. He re-filed his survival action on May 2, 2011 and, again, the government moved to dismiss the case. *Id.* at *2.[2] In opposing the government's motion, Mizrach argued, in part, that the statute of limitation was tolled, either by filing the first survival action, or the claim with HCADRO. *Id.* at *2. In dismissing his second case, the District Court barely touches on the HCADRO filing, only holding that the FTCA's limitations period is jurisdictional and that that Maryland law does not apply to the federal FTCA statute. *Id.* at *3-*4. The District Court did not look at the legislative intent behind the word "action" and, in fact, did not attempt to define the word at all.

---

[1] The first case is known as *Mizrach I*.

[2] The second case is known as *Mizrach II*.

19

Had the District Court simply looked to the dictionary definition of "action," it would have come to the correct conclusion that "action" encompasses a filing with HCADRO.

## IV.  The FTCA's six-month limitations period is not jurisdictional and, therefore, equitable tolling may be applied

Statutes of limitations fall into two broad categories – affirmative defenses that can be waived and so-called "jurisdictional" statutes that are not subject to waiver or equitable tolling. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008). If a statute is determined to be non-jurisdictional, there is a rebuttable presumption in favor of equitable tolling. *Id.* at 137. Section 2401(b) of the FTCA is a non-jurisdictional statute because it was not enacted to achieve any broader, system-related goal beyond encouraging the timely filing of claims. *Id.* at 133.

In the underlying action, the United States argued that Section 2401(b)'s requirements are jurisdictional, and therefore, equitable considerations cannot be applied to toll the limitations period. (Doc 3-1 at 8); (Doc 5 at 4). The trial court agreed. (Doc 18, Letter Order of Feb. 11, 2014). Both the United States and the trial court rely upon cases that are either factually inapposite to the instant matter or that were incorrectly decided in light of the Supreme Court cases *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) and *John R. Sand & Gravel*, 552

U.S. 130. Notably, there was no discussion of either of these cases during the February 10, 2014 hearing that resulted in the dismissal of Mr. Raplee's case.

In *Irwin v. Department of Veterans Affairs*, Mr. Irwin, a former government employee, brought an employment discrimination case against the United States alleging that the VA fired him on the basis of his race and disability. 498 U.S. at 90-91. Mr. Irwin filed a complaint with the VA, which was denied. *Id.* at 91. The Equal Employment Opportunity Commission (EEOC) affirmed the decision and mailed copies of right-to-sue letters to Irwin and his counsel. *Id.* at 91. The statute governing employment discrimination claims, 42 U.S.C. § 2000e-16(c), provides that a complaint against the federal government must be filed within 30 days of receipt of the EEOC notice. *Id.* at 91. Irwin filed a complaint in federal court 44 days after his attorney received the EEOC letter. *Id.* at 91. Mr. Irwin's attorney failed to receive the letter and respond sooner because he had been out of the country. *Id.* at 91.

The VA moved to dismiss the case on limitations grounds and won, despite Irwin's arguments that equitable tolling should apply to limitations periods in suits against the government. *See id.* The Court of Appeals for the Fifth Circuit affirmed the result. *Id.* Although the Supreme Court affirmed the result of the lower courts, it did so on other grounds, creating a ". . . *general* rule to govern the applicability of equitable tolling in suits against the Government." *Id.* at 95 (emphasis added).

21

In *Irwin* the Supreme Court recognized that suits against the government are only available where sovereign immunity is waived, but once Congress has made such a waiver, "equitable tolling [is] applicable against the Government in the same way that it is applicable to private suits . . ." *Id.* at 95. The Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95-96.

At the February 10, 2014 hearing on the United States' motion to dismiss, Judge Grimm noted the "unfairness" in the outcome of the case and said that the United States could have undertaken several measures to ensure receipt of HHS's denial letter. (Hearing Transcript at 45:10). In response, the United States argued that equitable tolling can only be applied where the statute explicitly permits it, stating, "[a]ll of those steps sound perfectly reasonable to me, but the statute doesn't require them." (*See* Hearing Transcript at 46:3-4). The United States continued that requiring further steps to ensure receipt of the denial notice would be "switching the burden" and "switching the whole system." (*Id.* at 46:12-13).

But, in *Irwin*, the Supreme Court held that there is a rebuttable presumption *in favor* of applying equitable tolling. It is the United States that is trying to switch the burden. Furthermore, the Supreme Court did not limit its ruling to the statute at issue in that case and did not limit its ruling only to statutes explicitly providing for

22

equitable tolling. *Irwin*, 498 U.S. at 96-97. In fact, the Court was very careful to

explain that its ruling was *general* and must apply to all limitations periods in suits

against the government. *Id.* at 95. The Court stated:

> The phraseology of this particular statutory time limit is probably very similar to some other statutory limitations on suits against the Government, but probably not to all of them.
>
> .   .   .
>
> . . . but we are not persuaded that the difference between [statutes] is enough to manifest a congressional intent with respect to the availability of equitable tolling.

*Id.* at 94-95.  Despite potentially major differences in statutes of limitations for

cases against different government agencies, the Court still ruled that equitable

tolling should apply in every case. *Id.*

Providing an example of two very different statutes, the Supreme Court

compared the 30-day limitations period in *Irwin* to the six-year limitations period

examined in *Soriano v. United States*, 352 U.S. 270, 271, n.1 (1957). Despite their

obvious differences, the Supreme Court ruled that equitable tolling should apply to

both. *Irwin*, 498 U.S. 89 at 95. Equitable tolling should be available here too,

where Section 2401(b) of the FTCA requires the claimant to file an "action" within

six months from the federal agency's mailing of the claim denial. 28 U.S.C. §

2401(b). The statute in this case is more similar to *Irwin* than the one at issue in

*Soriano*.

23

The Supreme Court in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), further clarified the general rule created in *Irwin* and stated that there are two broad categories of statutes of limitations: non-jurisdictional, affirmative defenses that can be waived; and jurisdictional statutes that are not subject to equitable tolling principles. *Id.* at 133-134. Such statutes are sometimes referred to as "jurisdictional" requirements, as shorthand. *Id.* The United States argues that Section 2401(b) falls into the latter category, but cannot cite any language in the statute preventing the application of equitable tolling. *John R. Sand & Gravel Co.* is especially illuminating on this point as it states jurisdictional statutes are not concerned just with protecting the government's case-specific interest in timeliness, but go further in attempting "to achieve a broader system-related goal." *Id.* at 133. Such broader goals include facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency. *Id.*

Four other United States Circuit Courts examining the FTCA's limitation period in light of *Irwin* and *John R. Sand & Gravel Co.* have held that Section 2401(b) is not an "absolute" or "jurisdictional" requirement. For example, the Ninth Circuit in *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1034 (9th Cir. 2013) (en banc) endorsed the Supreme Court's holding in *Irwin*, and extended it to the Section 2401(b)'s six-month limitation period at issue in this case. *Id.* In extending

24

*Irwin's* "general rule", the Nine Circuit stated that "some statutes of limitation are 'more absolute,' and do not permit 'court[s] to consider whether certain equitable considerations warrant extending a limitations period.'" *Id.* at 1046 (quoting *John R. Sand & Gravel Co.*, 552 U.S. 130 at 133-34). However, the "consequences of labeling a particular statutory requirement 'jurisdictional' are 'drastic.'" *Id.* at 1035. (quoting *Gonzalez v. Thaler*, -- U.S. --, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012)).

The Ninth Circuit ultimately concluded that Section 2401(b) is not an absolute, jurisdictional requirement precluding the application of equitable tolling principles for two reasons. First, contrary to what the United States argues, "the fact that the FTCA is predicated on a sovereign immunity waiver does not make the six-month filing deadline a jurisdictional prerequisite, not subject to equitable tolling." *Id.* at 1046. Second, Section 2401(b) does not, either explicitly or through its legislative intent, evince a concern with achieving "broader system-related goals" beyond simply protecting the government's "case-specific interest in timeliness." *Id.* at 1047 (quoting *John R. Sand & Gravel Co.*, 552 U.S. 130 at 133). The "obvious" purpose of Section 2401(b) is to "encourage the prompt presentation of claims." *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111 (1979)). This is the generic goal of all statutes of limitations: "to protect defendants

25

against stale or unduly delayed claims." *Id.* Therefore, Section 2401(b) is non-jurisdictional and equitable tolling may apply. *Id.*

The Eighth Circuit confirms this view. In *Schmidt v. United States*, a flight attended brought suit under the FTCA alleging that negligence of air traffic controllers resulted in injuries. *Schmidt v. United States*, 933 F.2d 639 (8th Cir. 1991). Initially, the Eight Circuit ruled that the Section 2401(b) is jurisdictional and equitable tolling is not applicable. However, the United States Supreme Court granted the plaintiff's writ of certiorari, vacated the earlier judgment and remanded the case back to the Eighth Circuit to comport with the Supreme Court's ruling in *Irwin*. *Id.*; *Schmidt v. United States*, 498 U.S. 1077 (1991).

On remand, the Eighth Circuit held that Section 2401(b) *is not* jurisdictional, and "failure to comply with it is merely an affirmative defense which the defendant has the burden of establishing." *Id.* at 640. While the Supreme Court has not directly ruled on whether 2401(b) is jurisdictional, the decision to remand the case strongly implies that the Supreme Court endorses an interpretation of *Irwin* and *John R. Sand & Gravel Co.* that is consistent with *Schmidt* and *Kwai Fun Wong*.

The Third and Sixth Circuit Courts of Appeals also endorse this view. The Third Circuit in *Hughes v. United States* held that equitable tolling applies to Section 2401(b), stating:

26

> In conclusion, the same rebuttable presumption of equitable tolling applicable to private defendants applies to suits against the United States. Thus, the FTCA's statute of limitations is not jurisdictional. Failure to comply with the statute is "an affirmative defense which the defendant has the burden of establishing" (internal citations omitted).

*Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001) (citing *Irwin*, 498 U.S. at 95-96 and Fed. R. Civ P. 8(c); quoting *Schmidt v. United States*, 933 F.2d at 640). In *Glarner v. United States Dep't of Veterans Administration*, the Sixth Circuit discussed *Schmidt* directly, saying the case "makes it clear that the equitable tolling presumption applies to § 2401(b) as well." *Glarner v. United States Dep't of Veterans Admin.*, 30 F.3d 697, 701 (6th Cir. 1994).

The United States and the lower court mistakenly rely upon *Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738,741 (4th Cir. 1990) (en banc) and *Zander*, 843 F. Supp. 2d at 609, to support their position that Section 2401(b) is jurisdictional. (*See* Doc 18, Letter Order of Feb. 11, 2014); (Doc 3, Defs.' Mot. to Dismiss). In *Gould*, the Fourth Circuit determined that, under Section 2401(b), the statute of limitations begins to run from the date when the plaintiff knows, or in the exercise of due diligence, should have known both the existence and the cause of his injury. *Gould*, 905 F.2d at 742. The plaintiff in that case attempted to argue that Section 2401(b)'s two-year limitation period was tolled until the date she could have known that the physicians she alleged committed malpractice were federal employees. *See id.*

27

The holding in *Gould* did not reach whether equitable tolling applies in a FTCA case[3], did not involve any instance of defective mailing, and did not interpret the six-month limitations period of Section 2401(b). *Gould* dealt with the "discovery rule," which is a separate legal consideration from equitable tolling. Determining whether equitable tolling should apply goes beyond the Plaintiffs' knowledge of the injury and the parties involved, requiring an inquiry into the actions of the defendant and the equities of the case. Furthermore, the Fourth Circuit did not have the benefit of *Irwin* or *John R. Sand & Co.*, the seminal Supreme Court cases on equitable tolling in FTCA cases, because *Gould* came down before either of those cases.[4] As explained in detail above, *Irwin* and *John R. Sand & Co.* set the standard for equitable tolling in FTCA cases. The Supreme Court's vacation of the Eighth Circuit's judgment in *Schmidt* further solidifies that Section 2401(b) is not jurisdictional. *Schmidt v. United States*, 498 U.S. 1077 (1991).

In *Zander v. United States*, 843 F. Supp. 2d. 598 (D. Md.), *aff'd*, 494 F. App'x 386 (4th Cir. 2012), the claimant changed mailing addresses between the time she filed her administrative claim with the Air Force and the Air Force issued

---

[3] Dicta in *Gould* suggests that only the two-year, and not the six-month, limitation period of 2401(b) might be jurisdictional and not subject to equitable tolling.

[4] Judge Grimm recognized this in the hearing of Feb. 10, 2014, stating "the Fourth Circuit had its last opportunity to look at this in *Gould,* which was in 1990, also en banc. . ." (Hearing Transcript 29:7 – 29:8).

28

their notice of denial. *Id.* at 601-02. The postal service returned the Air Force's

first denial letter and marked it "return to sender." *Id.* The Air Force then issued a

second denial letter to the second address. *Id.* The claimant attempted to argue that

the six-month limitation period in Section 2401(b) should begin to run from the

date of the Air Force's second denial letter because the first one was mailed to an

incorrect address. *Id.* at 606-07. The court ruled that finding the initial mailing

defective "would be to contort the meaning of mailing under 2401(b) to exclude

otherwise valid mailings **free from neglect or undue delay**." *Id.* at 609 (emphasis

added).

Setting aside the glaring factual differences between *Zander* and this case

the above highlighted passage raises, the court also mistakenly concluded stated

that Section 2401(b) is jurisdictional. *Id.* at 603, 609 (citing *Gould*, 905 F.2d at

741). In making this hasty determination, the court merely cited *Gould*, and failed

to incorporate or provide any *Irwin* or *John R. Sands & Co.* analysis whatsoever.

*Id.* at 609 (citing *Gould*, 905 F.2d at 741). As explained at length above, a court

may not summarily conclude that a statute is jurisdictional as labeling a statute as

such is a "drastic" measure. *Kwai Fun Wong*, 732 F.3d 1035. The principles

outlined in *Irwin* and *John R. Sand & Gravel Co.* must inform the analysis.

According to the Supreme Court in those two cases, a statute of limitation is only

jurisdictional where its legislative history clearly indicates that it was enacted "to

29

achieve a broader system-related goal." *John R. Sand & Gravel Co.*, 552 U.S. at 133. A statute of limitation is not considered jurisdictional just because it is concerned with ensuring the "prompt presentation of claims," because that is the goal of every statute of limitation. *Kwai Fun Wong*, 732 F.3d at 1046-47.

Here, the United States and the trial court below could not cite any Fourth Circuit or binding District Court case analyzing Section 2401(b) under *John R. Sand & Gravel Co.* and demonstrating that the statute was designed to accomplish any special goal.[5] Had the court in *Zander* undertaken a more thorough analysis as did the Ninth, Eighth, Third, and Sixth Circuits, it likely would have determined that Section 2401(b) is non-jurisdictional because it was not enacted "to achieve a broader system-related goal." *John R. Sand & Gravel Co.*, 552 U.S. at 133.

## V.    Equitable tolling must be applied here, where the United States defectively mailed the notice of final denial that would normally trigger the FTCA's six-month limitations period

In light of the clear authority holding that Section 2401(b) is not jurisdictional, equitable tolling must be applied to this case, where HHS defectively mailed the notice of final denial that would normally trigger the FTCA's six-month limitations period.

---

[5] *Mizrach v. United States* makes passing reference to *John R. Sand & Gravel*, but fails to perform any analysis of Section 2401(b) in accordance with that case. *Mizrach v. United States,* CIV. WDQ-11-1153, 2012 WL 414806, at *3 (D. Md. Feb. 7, 2012) aff'd, 539 F. App'x 284 (4th Cir. 2013) cert. denied, 134 S. Ct. 1947 (U.S. 2014).

This case is substantially similar to *Matos v. United States*, a case in which equitable tolling was effectively applied to Section 2401(b) where the government agency failed to properly mail the notice of final denial. *Matos v. United States*, 380 F. Supp. 2d 36 (D.P.R. 2005).[6] In that case, the letterhead of the plaintiff's attorney had two addresses: a P.O. Box and a physical address. *Id.* at 37. The administrative agency sent a denial letter certified to the plaintiff attorney's physical address, received no confirmation that the denial letter was received, and failed to resend the letter to the secondary address. *Zander*, 84 F. Supp. 2d at 608 (synthesizing *Matos*).

Like the agency in *Matos*, here HHS had knowledge that no one received the letter as the certified receipt was not signed, the letter was returned marked "no longer at this company," but the agency still failed to perform any further inquiry. (*See* Doc 3-7). There were five addresses on the letterhead of Mr. Raplee's attorney's correspondence with HHS. (*See* Doc 3-3 at 1-2). HHS sent a denial letter certified to one physical address, received confirmation that the denial letter was *not* received, and failed to resend the letter to any other address. *Id.* It is undisputed that Mr. Raplee's counsel did not receive the denial letter as the return receipt was not signed and this fact was known to HHS as it was returned to them.

---

[6] The *Matos* court does not use the phrase "equitable tolling" but the reasoning of the decision is the same as if it did.

31

In a number of cases including cases involving notice from the IRS, courts have acknowledged that, while the law presumes delivery of a properly addressed certified mailing, this presumption does not apply to certified mail where the return receipt is not received by the sender. *Matos*, 380 F. Supp. 2d at 38 (citing *Mulder v. Commissioner*, 855 F.2d 208 (5th Cir., 1988); *Moya v. United States*, 35 F.3d 501 (10th Cir. 1994). That is precisely what happened in this case. The presumption of receipt or delivery of certified mail dissolves when lack of receipt is shown. *Id.* In such cases where the notice is not actually received, the courts have held that it is incumbent upon the sender either to enquire with the addressee or send the letter again. *Id.*

For example, *Matos* draws analysis from *Powell v. Commissioner of Internal Revenue,* 958 F.2d 53 (4th Cir. 1992). In *Powell,* the IRS sent a tax deficiency notice by certified mail to Powell at the address of the previous year's tax return. Powell moved and the Postal Service did not forward to Powell's new address and either did not return it to the IRS or the IRS misplaced it. Powell never responded and was sent a letter of the IRS's intention to levy the tax against him if not paid in ten days. Powell filed a petition with the tax court seeking redetermination. The IRS filed a motion to dismiss because Powell failed to respond to the letter within the allowed ninety days of the mailing. *Matos,* 308 F. Supp. 2d at 38-39 (summarizing *Powell*). The statute governing the notice of tax deficiency, 26 U.S.C. § 6212(b)(1), is similar to 28 U.S.C. § 2401(b), which provides that notice

32

is sufficient if it is mailed to the taxpayer at the last known address. In *Powell*, the court found that the mailing was insufficient because of the lack of due diligence on the part of the IRS. The IRS had no return receipt which meant that either the Postal Service or the IRS had erred. *Id.* Similar to the IRS having an obligation to be diligent in its mailing, HHS had an obligation to be diligent as well in this case. The law required that HHS follow up with Mr. Raplee after it received the unopened, returned, notice of final denial letter and knew that Mr. Raplee had not received it.

As stated in *Zander*, a case upon which the United States heavily relies, it would ". . . contort the meaning of mailing under 2401(b) to exclude [an] otherwise valid mailing **free from neglect or undue delay**." *Zander v. United States*, 843 F. Supp. 2d 598, 609 (D. Md. 2012) (emphasis added). *Zander*, *Powell*, and *Matos*, read together, carve out a clear exception for equitable tolling in cases where the mailing of a final denial notice was done negligently or with undue delay.

Here, HHS's mailing of the final denial notice was not free from neglect or undue delay. Not only was HHS in possession of alternative addresses for Mr. Raplee's attorney, but also for Mr. Raplee himself as his address was submitted with the claim originally. (*See* Doc 3-3 at 6). *Matos* held that the administrative agency had a duty to resend the denial letter. In the present case, the letter was only mailed once, which was known to be a failure. Therefore, the mailing of the final denial letter was defective and either the six-month limitations period of 28 U.S.C. § 2401(b) never actually began, or it should be equitably tolled.

33

## CONCLUSION

Plaintiff-Appellant, John David Raplee, Jr. respectfully requests that this Court reverse the District Court's order dismissing the underlying action. Mr. Raplee complied with 28 U.S.C. § 2401(b) when he timely filed a claim with HCADRO on November 8, 2013. Furthermore, even if this Court determines that an HCADRO filing does not constitute an "action" to satisfy Section 2401(b), the six-month limitation period is not jurisdictional and there is a rebuttable presumption in favor of equitable tolling. HHS defectively mailed its notice of final denial to Mr. Raplee and never rectified the problem. Therefore, the FTCA's six-month limitation period never actually began.

## REQUEST FOR ORAL ARGUMENT

Appellant believes the Court would benefit from oral argument on the issues raised in this appeal and respectfully requests that oral argument be set for this matter.

Respectfully submitted,

ASHCRAFT & GEREL, LLP

By: */s/ L. Palmer Foret*
    L. Palmer Foret, Esq.
    Wayne Mansulla, Esq.
    Peter T. Anderson, Esq.
    11300 Rockville Pike , Ste. 1002
    Rockville, MD 20852
    (301) 770-3737 Telephone
    lpforet@ashcraftlaw.com
    panderson@ashcraftlaw.com
    *Counsel for Appellant*

34

# STATUTORY ADDENDUM

# ADDENDUM TABLE OF CONTENTS

*Page*

26 U.S. Code § 6212 (b)(1)...................................................Add. 1

28 U.S. Code § 1291...........................................................Add. 1

28 U.S. Code § 1331...........................................................Add. 1

28 U.S. Code § 1346 (b)(1)...................................................Add. 2

28 U.S. Code § 1442...........................................................Add. 2

28 U.S. Code § 2671...........................................................Add. 4

28 U.S. Code § 2679...........................................................Add. 4

28 U.S. Code § 2401(b)........................................................Add. 7

42 U.S. Code § 2000e–16(c)...................................................Add. 7

Md. Code § 3-2A-02(a)(2).....................................................Add. 8

Md. Code § 3-2A-04(a)(1)(i)..................................................Add. 8

Md. Code § 3-2A-04(b).........................................................Add. 8

Md. Code § 3-2A-06...........................................................Add. 10

Fed. R. App. P. 4(a)(1)(A)....................................................Add. 13

Fed. R. Civ. P. 12(b)(1)......................................................Add. 13

**26 U.S. Code § 6212 (b)(1)**

(b) Address for notice of deficiency

(1) Income and gift taxes and certain excise taxes

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

**28 U.S. Code § 1291**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**28 U.S. Code § 1331**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S. Code § 1346(b)(1)**

(b)    (1) Subject to the provisions of chapter <u>171</u> of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**28 U.S. Code § 1442**

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to

the district court of the United States for the district and division in which the defendant was served with process.

(c) Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

> (1) protected an individual in the presence of the officer from a crime of violence;

> (2) provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

> (3) prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d) In this section, the following definitions apply:

> (1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

> (2) The term "crime of violence" has the meaning given that term in section 16 of title 18.

> (3) The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401 (17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

> (4) The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

> (5) The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6) The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

## 28 U.S. Code § 2671

As used in this chapter and sections 1346 (b) and 2401 (b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

"Employee of the government" includes

> (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and

> (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

"Acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101 (3) of title 32, means acting in line of duty.

## 28 U.S. Code § 2679

(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346 (b) of this title, and the remedies provided by this title in such cases shall be exclusive.

(b)

> (1) The remedy against the United States provided by sections 1346 (b) and 2672 of this title for injury or loss of property, or

Add. 4

personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—

> (A) which is brought for a violation of the Constitution of the United States, or

> (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

(c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury. The employee against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the head of his department to receive such papers and such person shall promptly furnish copies of the pleadings and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the head of his employing Federal agency.

(d)

> (1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

> (2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the

incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

(3) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) [1] of the Federal Rules of Civil Procedure. In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.

(4) Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346 (b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

(5) Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675 (a) of this title, such a claim shall be deemed to be timely presented under section 2401 (b) of this title if—

> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and

(B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

(e) The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677, and with the same effect.

## 28 U.S. Code § 2401(b)

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

## 42 U.S. Code § 2000e–16(c)

(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

**Md. Code § 3-2A-02 (a)(2)**

(a)

(1)   All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

(2)  An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle

**Md. Code § 3-2A-04(a)(1)(i)**

(a)

(1)     (i)     A person having a claim against a health care provider for damage due to a medical injury shall file the claim with the Director and, if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physicians.

**Md. Code § 3-2A-04(b)**

(b) Unless the sole issue in the claim is lack of informed consent:

(1)     (i)     1.     Except as provided in subparagraph (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint;

2.     The claimant or plaintiff shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules; and

(ii)    In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1.    The limitations period applicable to the claim or action has expired; and

2.    The failure to file the certificate was neither willful nor the result of gross negligence.

(2)    (i)    A claim or action filed after July 1, 1986, may be adjudicated in favor of the claimant or plaintiff on the issue of liability, if the defendant disputes liability and fails to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant or plaintiff served the certificate of a qualified expert set forth in paragraph (1) of this subsection on the defendant.

(ii)    If the defendant does not dispute liability, a certificate of a qualified expert is not required under this subsection.

(iii)    The defendant shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules.

(3)    (i)    The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

(ii)    Discovery is available as to the basis of the certificate.

(4)    A health care provider who attests in a certificate of a qualified expert or who testifies in relation to a proceeding before an arbitration panel or a court concerning compliance with or departure from standards of care may not devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in personal injury claims.

(5)    An extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for good cause shown.

Add. 9

(6)    In the case of a claim or action against a physician, the Director shall forward copies of the certificates filed under paragraphs (1) and (2) of this subsection to the State Board of Physicians.

(7)    For purposes of the certification requirements of this subsection for any claim or action filed on or after July 1, 1989:

    (i)    A party may not serve as a party's expert; and

    (ii)    The certificate may not be signed by:

        1.    A party;

        2.    An employee or partner of a party; or

        3.    An employee or stockholder of any professional corporation of which the party is a stockholder.


**Md. Code § 3-2A-06. Judicial review**

(a) Rejection of award or assessment of costs. -- A party may reject an award or the assessment of costs under an award for any reason. A notice of rejection must be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party, or, if a timely application for modification or correction has been filed within 10 days after a disposition of the application by the panel, whichever is greater.

(b) Action to nullify award or assessment of costs. --

(1) At or before the time specified in subsection (a) of this section for filing and serving a notice of rejection, the party rejecting the award shall file an action in court to nullify the award or the assessment of costs under the award and shall file a copy of the action with the Director. Failure to file this action timely in court shall constitute a withdrawal of the notice of rejection. Subject to the provisions of subsection (c) of this section, the procedures applicable to the action including the form and necessary allegations in the initial pleading shall be governed by the Maryland Rules. The Director need not be named a party to any action under this section.

(2) If any party to the proceeding elects to have the case tried by a jury in accordance with the Maryland Rules, it shall be tried by a jury. Otherwise, the case shall be tried by a judge.

(3) The trial date for each rejection of a panel determination shall have precedence over all cases except criminal matters and workers' compensation appeals.

(4) The clerk of the court in which an action is filed under this subtitle shall forward a copy of the action to the State Board of Physicians.

(c) Modification, correction, or vacation of award or assessment of costs by court. -- An allegation by any party that an award or the assessment of costs under an award is improper because of any ground stated in § 3-223(b) or § 3-224(b)(1), (2), (3), or (4) of this title or § 3-2A-05(h) of this subtitle shall be made by preliminary motion, and shall be determined by the court without a jury prior to trial. Failure to raise such a defense by pretrial preliminary motion shall constitute a waiver of it. If the court finds that a condition stated in § 3-223(b) of this title exists, or that the award or the assessment of costs under an award was not appropriately modified in accordance with § 3-2A-05(h) of this subtitle, it shall modify or correct the award or the assessment of costs under an award. If the rejecting party still desires to proceed with judicial review, the modified or corrected award shall be substituted for the original award. If the court finds that a condition stated in § 3-224(b)(1), (2), (3), or (4) of this title exists, it shall vacate the award, and trial of the case shall proceed as if there had been no award.

(d) Admissibility of award; presumption of correctness. -- Unless vacated by the court pursuant to subsection (c) of this section, the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct.

(e) Admissibility of depositions from arbitration proceedings. --

(1) Depositions taken in the arbitration proceedings shall be as fully admissible as if noticed in court proceedings. Interrogatories and requests for admissions and production of documents in the arbitration proceedings remain binding in the court proceedings, subject to a duty of supplementation.

(2) The provisions of paragraph (1) of this subsection do not affect any rights to discovery on appeal.

Add. 11

(f) Itemization of certain damages; remittitur. --

    (1) Upon timely request, the trier of fact shall by special verdict or specific findings itemize by category and amount any damages assessed for incurred medical expenses, rehabilitation costs, and loss of earnings. Damages assessed for any future expenses, costs, and losses shall be itemized separately. If the verdict or findings include any amount for such expenses, costs, and losses, a party filing a motion for a new trial may object to the damages as excessive on the ground that the plaintiff has been or will be paid, reimbursed, or indemnified to the extent and subject to the limits stated in § 3-2A-05(h) of this subtitle.

    (2) The court shall hold a hearing and receive evidence on the objection.

    (3) (i) If the court finds from the evidence that the damages are excessive on the grounds stated in § 3-2A-05(h) of this subtitle, subject to the limits and conditions stated in § 3-2A-05(h) of this subtitle, it may grant a new trial as to such damages or may deny a new trial if the plaintiff agrees to a remittitur of the excess and the order required adequate security when warranted by the conditions stated in § 3-2A-05(h) of this subtitle.

    (ii) In the event of a new trial granted under this subsection, evidence considered by the court in granting the remittitur shall be admissible if offered at the new trial and the jury shall be instructed to consider such evidence in reaching its verdict as to damages.

    (iii) Upon a determination of those damages at the new trial, no further objection to damages may be made exclusive of any party's right of appeal.

    (4) Except as expressly provided by federal law, no person may recover from the plaintiff or assert a claim of subrogation against a defendant for any sum included in a remittitur or awarded in a new trial on damages granted under this subsection.

    (5) Nothing in this subsection shall be construed to otherwise limit the common law grounds for remittitur.

(g) Assessment of costs. -- If the verdict of the trier of fact is not more favorable to the party that rejected the arbitration panel's award, than was the award, the costs of the judicial proceedings shall be assessed against the rejecting party. Otherwise,

the court may determine the assessment of such costs. If the court vacates an assessment of arbitration costs, it shall reassess those costs as justice requires.

(h) Venue. -- Venue shall be determined in accordance with the provisions of § 6-201 of this article.

(i) Filing copy of verdict or other final disposition with Director. -- The clerk of the court shall file a copy of the verdict or any other final disposition with the Director.

HISTORY: 1976, ch. 235, § 1; 1977, ch. 265; 1979, ch. 156; 1981, ch. 588; 1986, ch. 640; 1987, ch. 596; 1988, ch. 109, § 7; ch. 160; 1989, ch. 5, § 1; 1991, ch. 21, § 3; ch. 25; 2003, ch. 252, § 10; 2004 Sp. Sess., ch. 5, § 1; 2006, ch. 44, § 6.


## Fed. R. App. P. 4(a)(1)(A)

(a) Appeal in a Civil Case.

> (1) *Time for Filing a Notice of Appeal.*

> (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.


## Fed. R. Civ. P. 12(b)(1)

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

> (1) lack of subject-matter jurisdiction;

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
No. <u>14-1217</u> Caption: <u>John David Raplee Jr. v United States</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. Type-Volume Limitation: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [X]    this brief contains <u>7,876</u> [state number of] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [ ]    this brief uses a monospaced typeface and contains_____[state number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. Typeface and Type Style Requirements: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X]    this brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013</u> [identify word processing program] in <u>14 point Times New Roman</u> [identify font size and type style]; or

   [ ]    this brief has been prepared in a monospaced typeface using _____[identify word processing program] in _____[identify font size and type style].

<u>/s/ L. Palmer Foret</u>                    Date: <u>July 23, 2014</u>
Counsel for Appellant

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
No. <u>14-1217</u> Caption: <u>John David Raplee Jr. v United States</u>

## <u>CERTIFICATE OF SERVICE</u>

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by ASHCRAFT & GEREL, LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **July 23, 2014**, Counsel for Appellants has authorized me to electronically file the foregoing **Brief for Appellants** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Neil R. White, Assistant U. S. Attorney
> OFFICE OF THE UNITED STATES ATTORNEY
> 6500 Cherrywood Lane
> Greenbelt, MD 20770
> 301-344-4342
> Neil.White@usdoj.gov

Additional a paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

July 23, 2014                                           /s/ Elissa Matias
                                                                Elissa Matias
                                                                Counsel Press